UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LILIANA SEKULOVSKI,

           Plaintiff,           Case Number 21-10792

v.                                         Honorable David M. Lawson

CHARTER TOWNSHIP OF COMMERCE and
JAY JAMES,

           Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DISMISSING COMPLAINT**

Plaintiff Liliana Sekulovski was the co-owner of a dog named Odin, a tan male Pit Bull Terrier, which was removed from Commerce Township after biting a child. The removal was ordered by a state court after the Township issued a citation to the other co-owner of the dog, Liliana's husband Ljupco (Lou), a hearing was conducted, and Lou agreed not to contest the removal order. Instead, Lou arranged for the dog to reside with a family member outside Commerce Township. Liliana sued the Township and its ordinance enforcement officer, alleging that she did not receive adequate notice of the proceedings and her rights under the Fourth and Fourteenth Amendments were violated. Both sides have moved for summary judgment. The undisputed evidence shows that there was no "seizure" of the dog within the meaning of the Fourth Amendment, and the plaintiff's rights under the Due Process Clause were not violated by the defendants. Therefore, the Court will grant the defendants' motion for summary judgment, deny the plaintiff's motion, and dismiss the case.

I.

The underlying facts of the case, summarized below, are undisputed in all respects material to the pending motions for dispositive relief.

Liliana Sekulovski co-owned Odin jointly with her husband, Lou Sekulovski (now deceased), and the couple resided with the dog on Cheshire Lane in Commerce Township, Michigan. On September 12, 2017, Odin bit a child. The Oakland County Animal Control Unit investigated a report of the dog bite and determined that the dog was owned by Lou Sekulovski. The father of the child who was bitten requested that the Township take action. Defendant Jay James, who is a Commerce Township Ordinance Enforcement Officer, investigated the complaint and consulted the Township's attorney, who advised him to issue a civil infraction ticket to Lou Sekulovski, who was identified as the dog's owner.

James issued a citation against Mr. Sekulovski for a violation of Commerce Township Ordinance § 10-9, which states, in its entirety: "A person shall not keep, harbor, or maintain any dangerous animal within the Township." *See* Municode: Commerce Charter Township Code of Ordinances § 10-9, https://library.municode.com/mi/commerce_charter_township,_(oakland_co.) /codes/code_of_ordinances?nodeId=COOR_CH10AN. Related sections of the Code state that "[a] violation of [the ordinance is] deemed to be a municipal civil infraction," and "[t]he township may . . . enforce [the dangerous animal ordinance] by seeking and obtaining equitable or injunctive relief from a court of competent jurisdiction." *Id.* §§ 10-15, 10-16.

The ticket was lodged with the State of Michigan's 52-1 District Court in Commerce Township. The state court issued several appearance notices, which were mailed to the Sekulovskis' residence, and Lou Sekulovski appeared for a hearing before the court on April 10, 2018. At that hearing, Lou Sekulovski was represented by counsel, and he entered a plea of

responsible for the infraction. It is undisputed that the Township did not ask for the dog to be destroyed, which was among the possible outcomes. *See* Mich. Comp. Laws § 287.322(3). Instead, it was the Township's intention all along to ask for the dog to be removed beyond its boundaries. During the hearing, the court acceded to that request and ordered that the dog be removed from the Township within 30 days. An order to that effect was docketed by the state court on April 23, 2018. After that, the order stated, if the dog was not removed, Lou Sekulovski could be held in contempt and subjected to a civil fine for each day the dog remained in the Township.

Sekulovski moved to stay the order of removal, indicating that he wanted to appeal to Oakland County Circuit Court, and the district court granted the stay pending appeal. However, he never followed up on that appeal on a timely basis. On June 12, 2018, he appeared again before the district court and stated that he no longer wanted to appeal the order, and that the dog had been removed from the Township the week before. He asked that the matter be closed. Odin thereafter resided at the home of Sekulovskis' nephew in Bloomfield Township, Michigan. The Sekulovskis still cared for the dog over the next eighteen months, taking him to several veterinary visits. Lou Sekulovski even went to live with the dog for a time. Plaintiff Liliana Sekulovski visited with the dog at her nephew's house every other weekend, usually staying for the night. Unfortunately, sometime in 2019 Odin was killed when he was struck by a car during a visit with the plaintiff at the plaintiff's mother's home in Fowlerville, Michigan.

Plaintiff Liliana Sekulovski admitted at her deposition that she signed the Oakland County Animal Control Unit report of the dog bite investigation, which identified her husband as the dog's owner. Liliana Sekulovski dep., ECF No. 8-4, PageID.143; *see also* Incident Report dated Sept. 12, 2017, ECF No. 8-3, PageID.172. Liliana also admitted that she knew that her husband was

going to state court on April 10, 2018, because he had received a ticket after the dog bit a child. Sekulovski dep. at PageID.145. However, she did not attend the court hearing. *Id.* at 146. Although the ordinance authorized the court to order the dog removed, there is no evidence that either Liliana or her husband actually were aware before the hearing that the Township would seek that relief. When Lou Sekulovski returned from state court, he told the plaintiff that the court had ordered that the dog be removed from the Township. *Id.* at 148.

Liliana further admitted that after she was informed about the order, she did not promptly do anything to object to the removal. *Id.* at 149. When asked if anyone from the Township took the dog away, Liliana admitted that "nobody physically took [her] dog away." *Id.* at 152. Liliana stated that when the dog was relocated, it was her husband's decision to move the dog to the nephew's house, he told her that's what he was going to do, and she "left it at that." *Id.* at 154. When asked, who took Odin away from her, Liliana answered, "My husband took him away from me." *Id.* at 157.

Eventually, in November 2018, Lou Sekulovski, through the same attorney that represents plaintiff Liliana in this matter, filed in the Oakland County circuit court a delayed application for leave to appeal the order of the 52-1 District Court commanding that the dog be removed from the Township. In his delayed application, Lou argued, among other things, that the order was an unconstitutional taking of private property and violated his due process rights. The application for a late appeal was denied. Lou Sekulovski also filed an application for leave to appeal in the Michigan Court of Appeals, and thereafter an application for leave to appeal in the Michigan Supreme Court, both of which also were denied.

Nearly 30 months after the unsuccessful state court appeal had run its course, the plaintiff filed her complaint in this matter alleging violations of her constitutional rights. She alleges via

- 4 -

42 U.S.C. § 1983 that her rights under the Fourth and Fourteenth Amendments were violated, and she included a count alleging conversion under state law. After discovery closed, the parties timely filed their cross-motions for summary judgment.

II.

The fact that the parties have filed cross-motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized summary judgment standard when deciding such cross motions: the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003); Fed. R. Civ. P. 56(c).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute. *Alexander*, 576 F.3d at 558 (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, that party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for" that party. *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet its burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When challenged, the party who bears the burden of proof must present a jury question as to each element of its claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). It must be emphasized, however, that when "evaluating the evidence, [the court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'" *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (quoting *PDV Midwest Ref., L.L.C. v. Armada Oil & Gas Co.*, 305 F.3d 498, 505 (6th Cir. 2002)).

Where the material facts are mostly settled, as here, and the question before the Court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *Cherry v. Am. Country Ins. Co.*, 449 F. Supp. 3d 701, 707 (E.D. Mich. 2020) (citing *Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009)).

The plaintiff' brings her federal claims under 42 U.S.C. § 1983. To state a claim under that statute, a plaintiff must allege that (1) she was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978); *Harris v. Circleville*, 583 F.3d 356, 364 (6th Cir. 2009); *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996). There is no dispute that the defendants acted under color of law. As noted earlier, the plaintiff points to the Fourth and Fourteenth Amendments as the source of her federal rights.

A. Fourth Amendment Claim

The plaintiff argues that her dog was seized in violation of the Fourth Amendment when the state court entered the order to remove the dog from the Township during the prosecution of the citation when she was not included as a party. The defendants contend that there simply was no seizure of the dog. They have the better argument.

The Fourth Amendment prohibits "unreasonable seizures" of property. *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018) (citing U.S. Const. amend. IV; *Camara v. Municipal Court of City & County of San Francisco*, 387 U.S. 523, 528-29 (1967)). "The Supreme Court has established that one of the purposes of the prohibition on unreasonable seizures of property is the protection of the individual's property rights in the seized item." *Fox v. Van Oosterum*, 176 F.3d 342, 350 (6th Cir. 1999) (citing *Soldal v. Cook County*, 506 U.S. 56, 62-63 (1992)).

"[T]he courts have yet to define the breadth of the Fourth Amendment's protection of property," but "[w]hatever the breadth of Fourth Amendment protection of property interests, that protection is limited to the breadth of the meaning of the word 'seizure' in the Fourth Amendment." *Ibid.* According to the Supreme Court, a "'seizure' of property" under the Fourth Amendment "occurs when there is some meaningful interference with an individual's possessory interests in that property." *Ibid.* (quotations omitted). However, "[t]he Supreme Court has only applied the 'meaningful interference with possessory interests' definition of seizure to cases where there is no debate that the challenged act is one of taking property away from an individual and the issue is whether that act of taking property away constitutes a meaningful interference with possessory interests." *Id.* at 351.

The undisputed record establishes that there was no Fourth Amendment violation because the plaintiff admits that nobody from the Township ever took her dog away, and it was her husband who voluntarily removed the dog to a new home beyond the Township's jurisdiction. By the plaintiff's own admission, no "taking away" of the dog by any Township official ever occurred, and, therefore, there was no "seizure" of the dog within the purview of the Fourth Amendment. Moreover, the plaintiff has not cited any controlling decision on point plainly holding, or even suggesting, that a "seizure" subject to Fourth Amendment regulation could be found to have occurred where a private citizen, in compliance with a judicial order issued after state court civil infraction proceedings, voluntarily removes an animal he owns from his place of residence to a new home elsewhere.

The plaintiff argues that a seizure occurred — and was effectuated by the defendants — when the state court issued its order commanding Lou Sekulovski to remove the dog from the Township at the defendants' behest. But she has not identified any authority even remotely

supporting the idea that compliance with a court order relating to property issued after a judicial proceeding amounts to a seizure, let alone an unreasonable one. Certainly, the court order interfered with the Sekulovskis' "possessory interests" in the dog, but it did not amount to an "act of taking property away."

In contrast with the plaintiff's position, the cases cited by her, and other cases nearer to the point, have found that a "seizure" of a dog occurred only where animals physically were taken into custody, injured, or killed by officials. *E.g.*, *Smith v. City of Detroit*, 751 F. App'x 691, 696 (6th Cir. 2018) ("By guaranteeing process to dog owners before their unlicensed dogs are killed, Michigan law makes clear that the owners retain a possessory interest in their dogs. This is particularly so in the context of everyday property that is not inherently illegal, such as some drugs, but instead is subject to jurisdiction-specific licensing or registration requirements, such as cars or boats or guns. Just as the police cannot destroy every unlicensed car or gun on the spot, they cannot kill every unlicensed dog on the spot."); *Benjamin v. Town of Islip*, No. 20-56, 2021 WL 8344132, at *4 (E.D.N.Y. Aug. 12, 2021), *report and recommendation adopted*, 2022 WL 1090608 (E.D.N.Y. Apr. 12, 2022) ("Although plaintiff's claim here involves the neutering and adoption of Eto — not the killing of the dog — the injury suffered is still cognizable. The crux of plaintiff's allegation is that defendants wrongfully withheld Eto, neutered him, and gave him to another person, thereby depriving plaintiff of Eto's companionship and the future benefits of his ownership."); *see also Mayfield v. Bethards*, 826 F.3d 1252, 1257 n.6 (10th Cir. 2016) ("Deputy Bethards's reliance on *Clark v. City of Draper*, 168 F.3d 1185 (10th Cir. 1999), is similarly misplaced. In *Clark*, the owner of two foxes that were seized and destroyed pursuant to state law to determine whether a child had been exposed to rabies, sued city officials under § 1983 for alleged violations of due process. In affirming summary judgment in favor of the City and its

officials, a panel of this court noted that both the U.S. Supreme Court and the Utah Territorial Supreme Court had held that property in domesticated canines is subject to the state's police power for the protection of its citizens. *But* Clark *is easily distinguished from the Mayfields' case because the public officials seized the foxes pursuant to a court order (and thus the* Clark *Court specifically held the case did not implicate the Fourth Amendment) and the animals were destroyed only after an evidentiary hearing.*") (cleaned up; emphasis added). It is undisputed that there was no such official physical transgression against the plaintiff's dog in this case.

At oral argument, plaintiff's counsel cited a line of cases, culminating in the Supreme Court's recent decision in *Torres v. Madrid*, --- U.S. ---, 141 S. Ct. 989 (2021), which recognized "the unremarkable proposition that the nature of a seizure can depend on the nature of the object being seized." The plaintiff relies on those cases as backup for her argument that a "seizure" subject to Fourth Amendment regulation occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Id.* at 1001. She contends that her (or Odin's) "freedom of movement" was impaired when defendant James issued a civil infraction against her husband for harboring a dangerous animal, and that the issuance of that citation by him constituted "means intentionally applied."

But *Torres* dealt with the seizure of a person, not the seizure of property. The question in that case was whether a seizure occurred when a police officer shot a fleeing suspect, even when the person temporarily eluded the police after being shot. The Court said that it did. 142 S. Ct. at 993-94. The Court observed, though, that "when speaking of property" ("house, papers, and effects . . ."), "'[f]rom the time of the founding to the present, the word "seizure" has meant a "taking possession."'" *Id.* at 995 (quoting *California v. Hodari D.*, 499 U.S. 621, 24 (1991)). Virtually answering the plaintiff's argument that a seizure occurred by the constructive

interference with the possession of her dog wrought by the court order, the Supreme Court explained that "[i]t is not surprising that the concept of constructive detention or the mere-touch rule developed in the context of seizures of a person — capable of fleeing and with an interest in doing so — rather than seizures of 'houses, papers, and effects.'" *Id.* at 1002.

The plaintiff in this case does not contend, and never has claimed, that *her* freedom of movement was impinged by any official action. Instead, she argues that a "seizure" occurred when Odin's freedom of movement — or her freedom to move him within and without the Township — was invaded by the issuance of a civil infraction against her husband and the resultant court finding of responsibility and order commanding him to remove the dog from the Township. She has not cited any case clearly establishing — or even remotely approaching — such an expansive reading of ordinary Fourth Amendment principles governing seizures of property. Under the plaintiff's construction of the law, virtually any municipal proceeding or pronouncement implicating the disposition of any item of real or personal property could constitute a "seizure" subject to Fourth Amendment regulation. She has not cited any cases endorsing such a remarkable view of Fourth Amendment jurisprudence, and the Court has found none.

B. Fourteenth Amendment Claim

The plaintiff's Fourteenth Amendment claim is premised on the allegedly procedurally deficient "seizure" of her dog contrary to the state regulations, which, she says, required her to be "joined as a party" in the state court civil infraction proceeding. But this was not a case where the dog was ordered destroyed or neutered or altered in any way. Instead, the state court ordered the plaintiff's husband to remove the dog. It was *he* that was subject to the court order. It was *he* that was commanded to relocate the animal. It was *he* that was burdened with the pain of contempt and civil fines. And it is uncontested that he received notice and his day in court. Viewing the

case in that way, lack of notice to the plaintiff was inconsequential. She was never the subject of the court's order, and the Township would have been hard pressed to seek a contempt finding against her, even if she had brought the dog back to her home.

However, the plaintiff's main complaint is that the dog was removed nonetheless, and she was not a party to the citation proceedings. A procedural claim under the Due Process Clause of the Fourteenth Amendment usually involves the deprivation of a liberty or property interest by the government without appropriate procedural protections, most commonly fair notice and a fair opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The Clause protects "'certain substantive rights — life, liberty, and property'" from loss "'except pursuant to constitutionally adequate procedures.'" *Chandler v. Village of Chagrin Falls*, 296 F. App'x 463, 468 (6th Cir. 2008) (quoting *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985)).

"To prevail on [her] procedural due process claim, [the plaintiff] must show that '(1) [s]he had a life, liberty, or property interest protected by the Due Process Clause; (2) [s]he was deprived of this protected interest; and (3) the state did not afford [her] adequate procedural rights prior to depriving [her] of the property interest.'" *Proctor v. Krzanowski*, 820 F. App'x 436, 439 (6th Cir. 2020) (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)). Procedural due process rights only attach once a plaintiff asserts a liberty or property interest. *Almario v. Attorney General*, 872 F.2d 147, 151 (6th Cir. 1989). To establish a liberty or property interest, the plaintiff must demonstrate that the Constitution or a federal or state statute grants her a protected right. *Ibid.* "Although property rights are protected by the U.S. Constitution, they are created by applicable state and local law. Specifically, property rights 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source

such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Lee v. City of Chicago*, 330 F.3d 456, 469 (7th Cir. 2003) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

Michigan law recognizes that dogs are "property." *Ten Hopen v. Walker*, 96 Mich. 236, 239, 55 N.W. 657, 658 (1893); *see also Koester v. VCA Animal Hosp.*, 244 Mich. App. 173, 176, 624 N.W.2d 209, 211 (2000) ("Pets have long been considered personal property in Michigan jurisprudence." (citing *Ten Hopen*)). But a dog owner's property right in a dog has been characterized as "imperfect or qualified." *Bugai v. Rickert*, 258 Mich. 416, 417, 242 N.W. 774, 775 (1932) (stating that dogs "hold[] their lives at the will of the legislature") (quoting *Sentell v. New Orleans & C.R. Co.*, 166 U.S. 698, 702 (1897)); *see also People v. Yeo*, 103 Mich. App. 418, 422, 302 N.W.2d 883, 885-86 (1981) ("The police power of the state has been used to regulate and control property in dogs to a greater extent than property in any other class of domestic animals. It is a peculiar kind of property.") (quoting *State v. Mueller*, 220 Wis. 435, 435, 265 N.W. 103, 106 (1936)).

The Michigan legislature has authorized courts to issue orders for the destruction of a dog that "has attacked or bitten a person" or otherwise "has shown vicious habits." Mich. Comp. Laws § 287.286a(1)(c), (d), (2). And the Commerce Township ordinance prohibits a person from "keep[ing], harbor[ing], or maintain[ing] any dangerous animal within the Township." Commerce Twp. Ord. § 10-9. The Supreme Court has recognized, over a century ago, that the State can curtail property rights in dogs this way without offending the Constitution. *Sentell*, 166 U.S. at 704 ("Even if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the state, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens. That a state, in a bona

fide exercise of its police power, may interfere with private property, and even order its destruction, is as well settled as any legislative power can be which has for its objects the welfare and comfort of the citizen."). Therefore, in Michigan, dogs may "'be subjected to peculiar and drastic police regulations by the state without depriving their owner of any federal right.'" *Bugai*, 258 Mich. at 416-17, 242 N.W. at 775 (quoting *Nicchia v. New York*, 254 U.S. 228, 230 (1920)).

The limited or qualified nature of property rights in dogs is well recognized. *See Danker v. City of Council Bluffs, Iowa*, No. 12-16, 2021 WL 5326409, at *13 (S.D. Iowa Oct. 29, 2021) ("Here, the [*Lunon v. Botsford*, 946 F.3d 425 (8th Cir. 2019)] decision counsels that a pit bull dog owner's interest is relatively modest, while a municipality's interest in protecting its citizens' health, safety, and welfare from dangerous animals is so substantial that dogs are subject to the police power of the state, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens. Similarly, the risk of an erroneous deprivation of the property interest in a pit bull is the destruction of the dog, but the governmental interest plainly permits that result."); *Est. of Holt v. City of Hattiesburg*, 800 F. App'x 228, 232 (5th Cir. 2020) ("The Court reaffirmed *Sentell* some years later in *Nicchia v. New York*, noting that '[p]roperty in dogs is of an imperfect or qualified nature,' and so dogs 'may be subjected to peculiar and drastic police regulations . . . without depriving their owners of any federal right.'" (quoting 254 U.S. 228, 230 (1920)). As *Sentell* and the cases that follow it have held, the right to keep a dog is subject to state regulations, which lawfully may permit even the destruction of an animal deemed to be dangerous without prior notice or legal process.

These cases make clear that any state-honored right to possession of the dog was curtailed in the first instance by the ordinance prohibiting the keeping of a dog within the Township after it has injured a person. It follows that any state-created right that the plaintiff may have had to keep

her dog within the Township certainly was extinguished by a judicial finding that the dog was dangerous, which occurred after Lou Sekulovski pleaded responsible to the infraction. The plaintiff has offered no evidence suggesting that the state court's factual finding that Odin was dangerous was unfounded or defective in any way. "Dog owners are [] entitled to due process protection of their property interest in their dogs *so long as they protect that interest by complying with reasonable regulations relating to the care and keeping of dogs*." *Holt*, 800 F. App'x at 232. The plaintiff's keeping of a dangerous animal within the Township plainly did not comply with the reasonable regulations which prohibited that situation.

Again, this is not case where the court ordered the dog destroyed without notice to the plaintiff. Destruction, which extinguishes the property altogether, is different from relocation, which preserves for the dog owner the value in the property. It has been recognized that an owner has certain procedural rights that must be honored when the State seeks to kill a dog. *See Smith*, 751 F. App'x at 696 (applying Fourth Amendment law). The same cannot be said for an ordered relocation of a dog acknowledged by one of its co-owners to be dangerous. Under the statutes and ordinances invoked in this case, a dangerous dog can be seen as a sort of contraband. And persons have no constitutionally protected property interest in possessing contraband. *See Illinois v. Caballes*, 543 U.S. 405, 408 (2005) ("any interest in possessing contraband cannot be deemed 'legitimate'") (citation omitted).

The plaintiff also argues that her due process rights were violated because certain state law procedural requirements were not honored. However, that cannot alone sustain any viable federal constitutional claim under the Fourteenth Amendment. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Even if it is assumed that the handing of the ticket was flawed in some way according to state law, there is no federal constitutional claim made out by that supposed mishandling. *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 592 (7th Cir. 2021) ("To the extent FKFJ alleges it was deprived of the process of applying for renewal, since the Village refused to even accept its application, its claim nonetheless fails. Process alone is not a protected interest subject to due process protections."); *Lavite v. Dunstan*, 932 F.3d 1020, 1033 (7th Cir. 2019) ("State and local law can create and confer constitutionally protected liberty and property interests, but state and local procedural protections do not by themselves give rise to federal due process interests.").

The defendants are entitled to a judgment as a matter of law on the plaintiff's Fourteenth Amendment claim.

### C. Municipal Liability

The Township argues that it is entitled to summary judgment on the plaintiffs' constitutional claims because there is no policy or practice that gives rise to municipal liability under *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658 (1978), and no constitutional violation is made out against the individual government defendant. A municipal defendant cannot be found responsible for a constitutional violation solely on the basis of *respondeat superior, Hirmuz v. City of Madison Heights,* 469 F. Supp. 2d 466, 484 (E.D. Mich. 2007) (citing *Monell,* 436 U.S. at 691). Moreover, there can be no municipal liability without a finding of a constitutional violation on the part of at least one state actor. *Cartwright v. City of Marine City,* 336 F.3d 487, 495 (6th Cir.2003) (holding that "[b]ecause the City can only be held liable if there is a showing of liability on the part of its officials, the determination that the officers did not violate [the plaintiff's] constitutional rights resolves plaintiff's claim against the City as well").

None of the actions or inactions by defendant Jay James give rise to a viable claim that he violated the plaintiff's constitutional rights. In addition, it is undisputed that the Township had not prosecuted a dog ordinance violation at any time during the preceding five years before it issued the citation to Lou Sekulovski. There is no evidence of any policy, custom, or practice that had grown from such a rarity, and there certainly was no occasion to anticipate a need for training. *See Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738-39 (6th Cir. 2015) (holding that a plaintiff alleging failure to train must come forth with facts that demonstrate either (1) "a pattern of similar constitutional violations by untrained employees and [the defendant's] continued adherence to an approach that it knows or should know has failed to prevent tortious conduct by employees, thus establishing the conscious disregard for the consequences of its action . . . necessary to trigger municipal liability," or (2) "a single violation of federal rights, accompanied by a showing that [the defendant] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation") (citations, quotations, and alterations omitted).

The Township is entitled to a judgment as a matter of law on the plaintiff's *Monell* claim.

### D. Conversion

The plaintiff pleaded a count of conversion in her complaint, contending that the state court's relocation order amounted to an act of "dominion" over the dog. Under Michigan law, "[c]onversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438, 104 N.W.2d 360, 362 (1960) (citation omitted). It requires proof of interference with one's personal property by dispossession, destruction, using it without permission, selling or pledging it, or refusing to surrender it on demand." *Ibid.* (citing 1 Restatement, Torts, § 223). The plaintiff did not address this count in her motion. However, the undisputed evidence shows that it

was her husband, not the defendants, that relocated the dog to another location. And even then, she was not dispossessed of ownership. The defendants are entitled to a judgment in their favor on this count as a matter of law.

### III.

The undisputed facts demonstrate that the defendants did not violate any of the plaintiff's federal rights, and she has not established a viable state law claim.

Accordingly, it is **ORDERED** that the plaintiff's motion for summary judgment (ECF No. 9) is **DENIED**.

It is further **ORDERED** that the defendants' motion for summary judgment (ECF No. 8) is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  August 1, 2022